EXHIBIT A

FEDERAL MEDIATION AND CONCILIATION SERVICE
- - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Arbitration

    between

UFCW LOCAL 400

     and

SAFEWAY, INC.

FMCS Case No. 180829-07957
(discharge of Quinton Byrd)

- - - - - - - - - - - - - - - - - - - - - x


### OPINION AND AWARD

      Pursuant to the terms of a collective bargaining agreement, the undersigned Arbitrator was selected in accordance with the rules of the Federal Mediation and Conciliation Service to hear and decide a dispute between the parties.  Hearings were held on April 1, and June 12, 2019, at the offices of the Union in Landover, Maryland, at which both parties appeared through counsel who presented evidence and made arguments.  The Union was represented by Blaine Taylor, Esq., and the Company was represented by Tony Torrain II, Esq.  The parties also submitted post-hearing briefs.  Based on the evidence presented and arguments made, the Arbitrator renders this Opinion and Award.

<u>Issue</u>

At the outset of the hearing, the parties agreed to the following issues:

> Whether the Company, Safeway, Inc., had good cause to discharge Quinton Byrd? If not, what shall be the remedy?

<u>Facts</u>

The parties disagree with respect to some of the facts of this case.  To the extent that witnesses may have given contradictory testimony, the Arbitrator makes these findings of facts based on his assessment of all the evidence, including the many photographs taken at store #1462, the store involved in this case, and at other stores. The Company is a large national supermarket chain which operates stores across the United States, including a number of stores in the Washington, D.C. area.  Quinton Byrd worked for the Company for some 20 years, 18 years as a produce manager.  For the last five years or so, Mr. Byrd worked as the produce manager at store #1462, until the Company suspended him, pending investigation, on July 18, 2018, for poor work performance, and then discharged him as the last step of the progressive discipline process.

Store #1462 has been an underperforming store for a period of time, and is, apparently, close to shutting its doors.  During the last nine months that Mr. Byrd was the produce manager in the store, the condition of the produce department was, as described below, unacceptable. As produce manager, it was Mr. Byrd's responsibility, among many other duties, to make sure that the produce department was

stocked with fresh produce throughout the day, that the shelves were "culled," i.e., that out-of-date produce was removed from the shelves and replaced with fresh produce, and that the department was clean and presentable to customers.  The Company did not expect Mr. Byrd to do this work by himself, and it provided Mr. Byrd a staff of seven to ten clerks who he was required to schedule, direct, and train, when necessary, to perform the work that was needed to maximize sales in the produce department.

There is no evidence that prior to late November 2017, the Company had imposed any discipline on, or that it had any discussions with Mr. Byrd about the poor conditions in the produce department of store #1462, but beginning in late November, various Company managers had discussions with Mr. Byrd about the conditions in the department, and began to impose discipline on him.  On November 28, 2017, Yosief Fikremariam, a Produce Operations Specialist, was at store #1462 with Cornell Sweetney, who was then the store director.  They observed a large amount of out-of-date produce on the shelves, some of which was as much as four months out of date.  As a result, that same day, Mr. Sweetney gave Mr. Byrd an oral warning for his failure to follow instructions to cull the out-of-date produce from the shelves, and he reminded Mr. Byrd that "Going forward, we need to teach and train your employees."

On March 19, 2018, Kevin Simmons, the Center of Store (COS) for the District in which store #1462 is located, was visiting the store as part of his regular evaluation of operations.  In his review of store conditions with Mr. Sweeney, they observed, at about 2 p.m.,

that the produce department was not culled or cleaned, that there were no bananas, the top selling item in the store, on the shelves, although there were bananas in the storage area, and that the wet side for refrigerated produce was mostly empty.  Mr. Byrd claimed that the truck was late that day, but it had arrived by 10:15 that morning, some four hours before these observations.  As a result, Mr. Simmons recommended that Mr. Byrd be given a written warning, and that day, Mr. Sweetney gave Mr. Byrd a written warning for failing to follow instructions, which had caused poor conditions and lost sales in the produce department.  Mr. Simmons testified that the produce department in store #1462 managed by Mr. Byrd was the worst produce department in his district.

On May 15, 2018, Mr. Fekremariam again visited store #1462, with Mr. Sweeney, and they observed that the displays in the produce department were missing price tags, that there was a shopping cart in the storage cooler, that boxes of produce were not separated and dated, and that although there were pineapples in storage, the front table display did not have enough pineapples.  As a result of these conditions, Mr. Sweeney gave Mr. Byrd a written three-day suspension for failing to follow instructions.  On May 30, Marcie Webb, then the Assistant Store Manager at store #1462, performed a store inspection, and took pictures of the produce department.  The shelves were nearly empty and the wet side had not been culled, a number of products had expired price tags, and there were advertisements for an expired Monopoly promotion.

Ms. Webb, who previously had worked with Mr. Byrd at other

stores, and knew him as a hard worker, was surprised at the condition of the produce department, and asked Mr. Byrd why the department was in such poor condition.  Mr. Byrd said it was because of the "young kids" who worked in the department, and he told Ms. Webb that he did not have time to teach them.  As a result of the poor conditions in the produce department, Ms. Webb gave Mr. Byrd a five-day suspension for failing to follow instructions in managing his department.  The Union grieved the five-day suspension, and on June 6, Santina Sergi, from the Human Resources Department, met with Mr. Byrd and the Union. Mr. Byrd explained that the produce department was short of staff, that employees from the department were pulled to work at the cash register, and that there were problems with refrigeration.  Ms. Sergi investigated Mr. Byrd's claims, and she determined there was no valid reason why the conditions in the produce department were as bad as they were.  As a result, Ms. Sergi upheld the five-day suspension, which is one of the issues in this arbitration.

In June of 2018, Israel Murcia became the store director of store #1462, replacing Mr. Sweetney, who had resigned after he was placed on a Performance Improvement Plan.  Mr. Murcia gave Mr. Byrd suggestions about improving the conditions of the produce department, and about staffing and scheduling, but Mr. Byrd did not implement any of Mr. Murcia's suggestions, blaming the condition of the department on the clerks, and on the department being short-staffed.  In Mr. Murcia's opinion, Mr. Byrd lacked leadership qualities and failed to take responsibility for any of the problems in his department.  At 2 p.m. on June 14, the produce department was in such bad condition

that Mr. Murcia took photographs of the department.  Although there was produce, including wrapped bananas and other fresh produce, in the storage area, the banana display was half empty, there were many gaps of fresh produce on the shelves, the produce on the shelves had not been properly rotated, and the produce that had been delivered had not yet been broken down.

Mr. Murcia had worked in store #1462 as the director for only five days, but based on what he saw in the produce department, he prepared a discipline report to give to Mr. Byrd.  However, when Mr. Murcia reviewed Mr. Byrd's personnel file, and saw that Mr. Byrd was on the last disciplinary step before discharge, he did not issue Mr. Byrd any discipline.  Instead, Mr. Murcia tried to coach Mr. Byrd on improving the conditions of the produce department, and on leading the workers in the department to do their jobs properly.  One of Mr. Murcia's suggestions was for Mr. Byrd to prepare a to-do list for the clerks, and Mr. Byrd did prepare a to-do list for the clerks, but he stopped the list after two days.  During the next several weeks, both Mr. Murcia and Mr. Byrd were on vacation, so they did not interact with each other.  However, on July 17, Mr. Murcia returned to store #1462 from the corporate office with James Stone, a COS.

Mr. Murcia noted that the produce department was in no better condition than it had been the previous month, and Mr. Stone asked Mr. Byrd why the produce department was in such poor condition. Mr. Byrd said that he had done a food safety audit that day which had taken him away from the work he needed to do in the department.  Mr. Murcia knew that a food safety audit takes less than 20 minutes, so

he took photographs of the conditions in the produce department, and sent them to Ms. Sergi in Human Resources seeking approval to take disciplinary action against Mr. Byrd.  Ms. Sergi approved Mr. Byrd's suspension pending investigation, and on July 18, Mr. Murcia asked Mr. Byrd to come to the office.  When Mr. Byrd arrived, Mr. Murcia told him that the Company was suspending him pending investigation for the poor conditions in the produce department.  Mr. Byrd kept telling Mr. Murcia, "I can't believe it, I can't believe it, " and after a few minutes, Mr. Murcia told Mr. Byrd to clock out and go home, which is what Mr. Byrd did.

The Union filed a grievance regarding Ms. Sergi's decision to suspend Mr. Byrd, and on July 23, the Company and the Union met to discuss what discipline, if any, should be imposed on Mr. Byrd.  The parties reviewed every discipline the Company had imposed on Mr. Byrd leading to the suspension pending investigation.  The Union and Mr. Byrd acknowledged that the produce department was in poor condition during the recent period that Mr. Byrd was the produce manager, but they explained that the reason for the poor condition of the produce department was that Mr. Byrd did not have enough trained help in the department.  In response. Ms. Sergi checked the work schedules of the employees in the produce department, and the time records, and she concluded that Mr. Byrd had sufficient help in the department, that he was responsible for the poor conditions in the department, and that termination was the appropriate penalty.  Thereafter, Ms. Sergi offered Mr. Byrd a position as a produce clerk in another store on a last chance agreement, but Mr. Byrd declined the offer, and the Union

filed a demand for arbitration, resulting in this hearing.  At the
hearing, the parties presented the evidence as set forth above.

<u>Positions of the Parties</u>

The Company asserts that it had good cause to terminate Mr.
Byrd because despite the Company's efforts at progressive discipline,
Mr. Byrd failed to achieve improvement in his work, ignored manager's
suggestions about how to improve, and demonstrated an inability to
perform the essential functions of his job as produce manager.  The
Company argues that there is no dispute that the conditions in the
produce department were terrible, that Mr. Byrd, as produce manager,
was responsible for these conditions, which included empty shelves
while produce was in the storage area, rotten produce on the shelves,
missing price tags and expired product, and that store #1462 was the
worst produce department in its district.  The Company notes that Mr.
Murcia, Mr. Byrd's last store director, withheld imposing discipline
on June 14, when he realized that Mr. Byrd was at the termination
step in the discipline process, and tried to coach Mr. Byrd on what
he needed to do to improve.  The Company contends that despite these
efforts by his manager, Mr. Byrd continued his poor work performance,
and that his termination was justified.

In response to the Union's claim that Mr. Byrd did not have
sufficient trained staff in the produce department, which accounted
for the poor conditions in the department, the Company argues that
there were from seven to ten workers in the produce department every
day, that Ms. Sergi reviewed the schedules for each day Mr. Byrd was

disciplined and determined that Mr. Byrd had enough help on each of these days, and that since it was Mr. Byrd's responsibility as the produce manager to train the employees in his department, his failure to do so contributed to the produce department's poor conditions.  In addition, the Company argues that Mr. Byrd's excuses, such as having to perform a food safety audit, or the Union's claim that the produce departments in other stores were in similar condition, do not excuse Mr. Byrd's poor work performance.  For all these reasons, the Company submits that termination was the next step in progressive discipline for Mr. Byrd based on the continued poor conditions in the produce department, that there was good cause for his termination, and that the grievance must be denied.

The Union asserts that Mr. Byrd had nearly 20 years of service with the Company with an unblemished discipline record until the last nine months, that he was acknowledged by management as a hard worker, that the pride he took in his job was obvious, and that the Company's stated reasons for his termination "are specious."  The Union contends that the Company's flimsy evidence includes hearsay written disciplinary actions from a store director who had his own performance issues and who did not testify, that the photographs introduced by the Company were taken at arbitrary times and do not show the whole picture, that the schedules offered by the Company did not show when the department employees actually performed work, and that the testimony of Mr. Murcia, the last store director, that Mr. Byrd was not improving, revealed that he had physically worked with Mr. Byrd for a total of only five days.

In addition, the Union argues that store #1462 was an underperforming store and is about to close, that there was high employee turnover, poor worker attendance and youth apathy, that "for all intents and purposes, Mr. Byrd was the first mate on a sinking ship," and that Mr. Byrd suffered because the Company ignored the fact that Mr. Byrd had no one to close at night. The Union further argues that none of this makes Mr. Byrd a poor produce manager, but shows that the Company did not provide Mr. Byrd with the necessary resources to succeed, i.e., it failed to provide Mr. Byrd, indeed the entire store, with adequate staffing. The Union insists that Mr. Byrd made many requests for additional help, and that his requests were recognized as needed, but that the Company failed to hire any additional employees, and directed produce clerks to work in other areas of the store.

Finally, the Union argues that Mr. Byrd's discharge was the result of retaliation by a district manager, Lori, against whom Mr. Byrd had filed a harassment complaint several years ago. According to Mr. Byrd, several of the Company managers told him that they had disciplined him because Lori had directed them to do so. The Union contends that the many arbitrary actions taken by the Company, for example, the decision to terminate him instead of demoting him to a store clerk, supports Mr. Byrd's theory of why he was terminated. For all these reasons, the Union submits that the grievance on behalf of Mr. Byrd should be sustained, and that he should be reinstated to his former position with full back pay, and be made whole.

## Discussion

The Union, at the hearing and in its brief, argued that other stores had poor conditions similar to the conditions that were found in the produce department at store #1462. However, the Union's evidence did not establish that other stores had poor conditions similar to those in store #1462. At the grievance meeting after Mr. Byrd was suspended pending investigation, Mr. Byrd and the Union acknowledged, in essence, that the produce department at store #1462 was, on many occasions, not in a presentable condition for customers, and at the hearing, Mr. Byrd confirmed the poor conditions in the produce department. The principle argument of Mr. Bird and the Union is that the produce department in store #1462 was in poor condition because the Company did not have a sufficient number of employees in the produce department, that the employees in the department were not properly trained, and that the employees were not showing up on time, or not showing up at all.

Obviously, it would be difficult to properly run a produce department without a sufficient number of competent employees present to perform the necessary work. However, the evidence establishes that during the period the Company imposed discipline on Mr. Byrd, there were enough employees in the produce department to avoid the poor conditions that were confirmed by witness testimony and by the photographs. Depending on the flow of customers, departments will always have, to some extent, empty shelves and missing product, and occasionally incorrect prices and out-of-date product. It is the responsibility of the department manager, in this case Mr. Byrd as

the manager of the produce department in store #1462, to keep these instances of poor conditions to a minimum.  Here, there were too many examples of empty shelves, and rotten and out-of-date produce on the shelves while fresh produce was in the storage area, to absolve Mr. Byrd, an experienced produce manager, of his responsibilities as the department manager, especially since Mr. Byrd had been coached by Mr. Murcia, the new store director, and had been previously warned and suspended for the same shortcomings.

The evidence also reveals that Mr. Byrd failed, as manager, to make sure that the employees in the produce department did their jobs, and even if the clerks were taken away at times to work in other areas, it was Mr. Byrd's job to properly train them, and to instruct and direct them to perform the tasks that would result in a presentable and properly culled produce department.  As noted, Mr. Byrd failed to perform his job as produce manager even after he was disciplined for the same shortcomings several times.  Moreover, if the clerks in the produce department were not performing their jobs as directed, or were excessively absent, Mr. Byrd should have been imposing discipline, or recommending that upper management impose discipline on them, yet there was no evidence that Mr. Byrd ever sought to discipline the clerks, or ever made this an issue, other than a few minor complaints here and there.  Neither Mr. Byrd nor the Union raised this as a serious issue until the Company suspended Mr. Byrd prior to the discharge in this case.

In sum, the Company had valid reasons to impose discipline on Mr. Byrd, a long-term produce department manager, for his failure

to properly perform his duties as the produce manager in store #1462, and to demote him from the position of produce manager. Thus, the evidence established that Mr. Byrd did not adequately perform his duties as a produce manager in store #1462, however, the Company did not have good cause to discharge him as an employee. Mr. Byrd did not engage in any misconduct that adversely affected his ability to perform the duties of a clerk in the produce department, or that adversely affected his ability to continue to be an employee of the Company. The appropriate penalty for Mr. Byrd's failure to perform his duties as a produce manager in store #1462 was for the Company to demote him to a clerk position at one of its stores.

At the hearing, there was testimony from Ms. Sergi that at some point after the Company discharged Mr. Byrd, the Company offered Mr. Byrd a clerk position in another store subject to a last chance agreement, but that he turned this offer down. The normal remedy would have been to reinstate Mr. Byrd to a clerk position subject to the terms of the Agreement, with back pay, less interim earnings, but the details of the Company's offer of another position to Mr. Byrd were not provided at the hearing, so the question of Mr. Byrd's duty to have mitigated his damages may be in dispute. In any event, the Arbitrator shall retain jurisdiction while the parties try to agree to an appropriate remedy in this case.

Therefore, based on the facts and circumstances of this case, and for the reasons explained, the Arbitrator issues the following

<u>Award</u>

The Company, Safeway, Inc., had good cause to discipline Quinton Byrd, and to demote him as produce manager at store #1462, but the Company did not have good cause to discharge Mr. Byrd as an employee.  The Company shall reinstate Mr. Byrd to a clerk position in the produce department of one of its stores, subject to the terms of the Agreement, with full back pay, and other benefits, less any earnings he received following his discharge.  Also, Mr. Byrd shall be required to demonstrate that he fulfilled the duty to mitigate damages.  The Arbitrator shall retain jurisdiction over any issues that may arise in the interpretation or implementation of this Award.

It is so ordered.


_Richard Adelman_
RICHARD ADELMAN

STATE OF NEW YORK )
                 ) ss.:
COUNTY OF NEW YORK)

I, RICHARD ADELMAN, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed the foregoing instrument, which is my Award.


Dated: September 5, 2019        _Richard Adelman_
                                RICHARD ADELMAN

14