IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SAFEWAY, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED FOOD AND COMMERCIAL )<br>WORKERS, LOCAL 400, )<br>)<br>)<br>Defendant. )<br>_____) | Civil Action No. 1:19cv1412 (JFA) |

## **MEMORANDUM OPINION**

This matter comes before the court on cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56. (Docket nos. 33, 35).[1] Safeway, Inc. ("Safeway") seeks to vacate an arbitration award reinstating the grievant, Mr. Quinton Byrd. United Food and Commercial Workers, Local 400 ("the Union") seeks to enforce the award, which held that Safeway did not have good cause to discharge Mr. Byrd but did have good cause to discipline him. The Union also requests attorneys' fees. For the reasons discussed below, the court denies Safeway's motion for summary judgment, grants the Union's motion for summary judgment, and upholds the arbitration award. The Union's request for attorneys' fees is denied.

## **I. BACKGROUND**

The dispute before the court arises from an arbitration award issued on September 5, 2019. Following the suspension pending investigation of Mr. Byrd after a series of disciplinary measures, Safeway and the Union met to discuss what further discipline, if any, should be

---

[1] The parties consented to the jurisdiction of the undersigned in this matter. (Docket nos. 23, 26).

1

imposed on Mr. Byrd. (Docket no. 1-1 at 8). Unable to come to a decision, the Union, pursuant to a Collective Bargaining Agreement ("CBA"), filed a demand for arbitration and the parties mutually selected Richard Adelman to hear and decide Mr. Byrd's case. (*Id.* at 2). The parties agreed that the issues before Mr. Adelman would be "Whether the Company, Safeway, Inc., had good cause to discharge Quinton Byrd? If not, what shall be the remedy?" (*Id.* at 3). Mr. Adelman held two hearings on April 1 and June 12, 2019 at which both parties appeared with counsel. (*Id.* at 2). He considered the evidence presented and the arguments made and found Safeway did not have good cause to discharge Mr. Byrd but it did have good cause to discipline him. (*Id.* at 3, 13–14). As an appropriate remedy, Mr. Adelman instructed Safeway to reinstate Mr. Byrd to a clerk position in the produce department in one of its stores with full back pay and other benefits, less any earnings he had received following his discharge. (*Id.* at 15).

On November 7, 2019, Safeway filed a petition seeking the vacation of the arbitration award. (Docket no. 1). Following this court's order, the Union filed its motion for summary judgment and memorandum in support on April 17, 2020. (Docket nos. 33, 34). Safeway also filed its motion for summary judgment and memorandum in support on April 17, 2020. (Docket nos. 35, 36). On May 1, 2020, the parties filed their respective oppositions (Docket nos. 39, 40) followed by their replies on May 7, 2020 (Docket nos. 41, 42). The court heard argument on May 15, 2020.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

It is well settled in the Fourth Circuit that in considering cross-motions for summary judgment, a district court should "rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard." *Monumental*

*Paving & Excavating, Inc. v. Pa. Mfrs. Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999); *see also Adamson v. Columbia Gas Transmission, LLC*, 987 F. Supp. 2d 700, 703 (E.D. Va. 2013). Summary judgment is appropriate if the record shows "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A material fact is one that may affect the outcome of a party's case. *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Here, there are no facts in dispute; rather, the legal issue is focused on the language of the CBA and the arbitrator's decision.

### B. Review of Arbitration Awards

In seeking to vacate an arbitration award, the plaintiff "shoulders a heavy burden." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006). Judicial review of an arbitration award is severely circumscribed thereby effectuating the very purpose of arbitration. *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012); *see also Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998) ("Review of an arbitrator's award . . . is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation."). "Every presumption is in favor of the validity of the award." *Richmond, Fredericksburg & Potomac R.R. Co. v. Transp. Comms. Int'l Union*, 973 F.2d 276, 278 (4th Cir. 1992). A district court may vacate an arbitration award if one of the conditions are met under the Federal Arbitration Act, 9 U.S.C. § 10(a),[2] or pursuant to common law grounds including "those circumstances where an

---

[2] The FAA provides the following grounds for vacatur: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of

3

award fails to draw its essence from the contract or the award evidences a manifest disregard of the law." *Patten*, 441 F.3d at 234. A district court's review of arbitral awards is limited to determining "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Richmond, Fredericksburg & Potomac R.R. Co*, 973 F.2d at 281 (quoting *Bhd. of Locomotive Eng'rs v. Atchison, Topeka and Santa Fe Ry. Co.*, 768 F.2d 914, 921 (7th Cir. 1985)). The court cannot reconsider the merits of an award. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 45 (1987).

### III. DISCUSSION

#### A. The Arbitration Award

Safeway alleges that the arbitrator exceeded his authority under the CBA and that the award improperly reflected his own personal notions of industrial justice. (Docket no. 36 at 1–2). Although Safeway acknowledged at the hearing that it was left to the arbitrator to determine what constituted "good cause" based on the evidence and his beliefs, it contends in its papers that the arbitrator applied two different "good cause standards"—one to discharge and one to discipline—and that the CBA provides no basis for doing so. (*Id.* at 9–10). The Union alleges that the arbitrator acted within his authority and that the award drew its essence from the CBA. (Docket no. 34 at 4–8).

The issue here is a narrow one: whether the arbitrator's decision that Safeway did not have good cause to discharge Mr. Byrd, only to discipline him, failed to draw its essence from the parties' CBA. An arbitration award fails to draw its essence from the contract "when an

---

misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

arbitrator has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong." *Choice Hotels Int'l, Inc. v. SM Prop. Mgmt., LLC*, 519 F.3d 200, 207 (4th Cir. 2008). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* Contract interpretation—here, interpretation of the CBA—is a question for the arbitrator. *United Steelworks of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960). "It is the arbitrator's construction which was bargained for, and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.* (citing *United Steelworks of America v. American Mfg. Co.*, 363 U.S. 564 (1960)). Furthermore, "in the absence of any express limitation or reservation included in the grievance, we presume that the parties, who agreed to arbitration, agree that the authority to address everything necessary to resolve the particular grievance is conferred upon the arbitrator." *Yuasa, Inc. v. Int'l Union of Elec., Elec., Salaried, Mach. and Furniture Workers, AFL-CIO, Local 175*, 224 F.3d 316, 321 (4th Cir. 2000).

In determining whether the award fails to draw its essence from the CBA, the question for the court is "whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). A court in reaching its decision should examine "(1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA, and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's proscribed limits." *Id.*

### (i) The Arbitrator Acted in Accordance with his Role According to the CBA

Safeway asserts that the arbitrator exceeded his role under the CBA by considering good cause in relation to discharge separate from good cause in relation to discipline. (Docket no. 36 at 1–2). Safeway contends that in doing this, the arbitrator did not comport with Article 21.3(2) of the CBA—that the arbitrator shall not "have the authority to effect a change in, modify, or amend any of the provisions of this Agreement." (*Id.* at 11, Docket no. 1-2 at 41). The Union contends that the CBA does not limit the arbitrator's broad remedial authority in any way, thus he did not exceed his authority. (Docket no. 34 at 8).

Article 21.3(2) of the CBA limits the arbitrator's authority as follows:

> The arbitrator shall not have the authority to decide questions involving the jurisdiction of any Local or of the International or which in any way affect or change the Union Security Clause, nor shall the arbitrator have the authority to effect a change in, modify, or amend any of the provisions of this Agreement or to make decisions or provisions covering wages or working conditions to be incorporated either in a new Agreement or any subsequent annual Agreement, except as hereinafter provided. (Docket no. 1-2 at 41).

The same section (Article 21.3(6)) further specifies that "[t]he decision of the Arbitrator shall be final and binding on both parties." (*Id.* at 42).

The parties agreed to the CBA, arbitration, and the issues presented to the arbitrator on this occasion. The agreed-upon issues assumed that if Safeway did not have good cause to discharge Mr. Byrd, which the arbitrator found to be the case, then it was within the arbitrator's purview to determine the remedy, albeit within the limits of the CBA as noted above. Given the issues presented, it appears that at the time of the arbitration the parties agreed that if the arbitrator found there was not good cause to discharge Mr. Byrd but there was good cause to take some lesser action, he should formulate a remedy to that effect. This is exactly what the arbitrator did. He did not exceed his authority by, as Safeway suggests, considering good cause

6

as to discharge and, separately, good cause as to discipline. This approach is not an irrational interpretation of the CBA which includes two separate actions, discharge and discipline. Simply, the arbitrator answered the issues the parties presented to him and, as the parties asked, he formulated a remedy. This remedy was within the limits of his role under the CBA which, for the most part, largely remains silent on the scope of the arbitrator's reach, limiting the arbitrator's authority only as far as that noted in Article 21.3(2). As none of those restrictions are evident here, the arbitrator clearly acted within the parameters of his broad role as delineated by the CBA.

### (ii) The Award does not Ignore the Plain Language of the CBA

As noted above, Safeway argues that the arbitrator fashioned two "standards" of good cause. (Docket no. 36 at 1–2). Safeway contends that this distinction cannot be rationally inferred from the CBA nor did the arbitrator offer any reason for this distinction. (*Id.* at 9–10). As a result of this dual standard, Safeway asserts that the award stemmed from the arbitrator's own personal notions of industrial justice. (*Id.* at 2). The Union responds that the arbitrator properly interpreted the terms of the language of the CBA. (Docket no. 39 at 4).

Under Article 10.2 of the CBA, Safeway has the "right to discharge or discipline any employee for good cause." (Docket no. 1-2 at 16). Nowhere in the agreement is "good cause" defined and, to that end, the interpretation of the term falls to the arbitrator. *See Enterprise Wheel & Car Corp.*, 363 U.S. at 599. In his decision, the arbitrator found that Safeway did not have good cause to discharge Mr. Byrd as an employee. While he was not required to do so, the arbitrator explained that Mr. Byrd's misconduct had not "adversely affected his ability to perform the duties of a clerk in the produce department, or that adversely affected his ability to continue to be an employee of the company." (*Id.* at 13). Although the evidence did not support

7

a finding of good cause for discharge, the arbitrator did find that Safeway had valid reasons to discipline Mr. Byrd "for his failure to properly perform his duties as the produce manager." (Docket no. 1-1 at 13–14). Nowhere in this reasoned analysis did the arbitrator disregard or modify the plain language of the CBA. Rather, the arbitrator interpreted the term "good cause" and applied that interpretation to the two actions set out in the CBA, discharge and discipline. This is not an irrational interpretation of the CBA, especially in light of the deference afforded to the arbitrator. In any case, the arbitrator's construction of the contract is exactly what the parties bargained for in submitting the issues they agreed upon. Contrary to Safeway's argument, the arbitrator's award does not ignore the plain language of the CBA.

### (iii) The Arbitrator's Discretion Comported with the Essence of the CBA's Limits

Safeway contends that the arbitrator "refused to accept the fact that the next step in the progressive disciplinary process for Mr. Byrd validly led to his discharge" and, as such, must have created a different good cause standard applicable to discharge. (Docket no. 36 at 9). The Union asserts that arbitrators are afforded "broad remedial authority," especially in the absence of specific contractual limitations as is the case here. (Docket no. 34 at 4–8). Further, the Union argues that the remedy imposed here is "standard fare in labor arbitration cases." (*Id.* at 7).

"Normally, an arbitrator is authorized to disagree with the sanction imposed for employee misconduct." *Misco*, 484 U.S. at 41. Although an arbitrator's decision must draw essence from the agreement before him, he is "to bring his informed judgment to bear in order to reach a fair solution of a problem." *Id.* (citing *Enterprise Wheel & Car Corp.*, 363 U.S. at 597). This is "especially true" in formulating remedies. *Id.* The parties, however, may limit the arbitrator's discretion and incorporate this into their agreement. *Id.*

8

Here, the parties stipulated that the issues before the arbitrator were whether Safeway had good cause to discharge Mr. Byrd and, *if not*, what the remedy ought to be. (*See* Docket no. 1-1 at 3) (emphasis added). The arbitrator heard the arguments put forth by the parties and read the parties' post-hearing briefs. He reviewed the evidence and rejected Safeway's decision to terminate Mr. Byrd finding that the discharge was without good cause. Then, directly adhering to the issues presented by the parties, the arbitrator proceeded to determine what the remedy should be. The arbitrator found good cause to impose a remedy of a demotion to a produce clerk for Mr. Byrd's failure to properly perform his duties as a produce manager. As the Union points out, the CBA does not mandate specific penalties for specific conduct nor does it limit the arbitrator's broad remedial authority; the arbitrator was not required to uphold Safeway's discharge penalty. The arbitrator, therefore, acted within his discretion to impose what he considered a reasonable remedy based on the particular facts and circumstances before him. It is not the Court's place to second guess this decision given that the arbitrator acted within the scope of his authority as provided by the CBA. Accordingly, the court concludes that the arbitrator's award here comported with the CBA's proscribed limits in determining an appropriate remedy.

Here, the arbitrator acted within his role as delineated by the parties' CBA, did not ignore the plain language of the CBA, and formulated an award within the proscribed limits of the CBA. The arbitrator "did the job he was told to do"—he directly addressed the issues presented to him by the parties. His decision was not irrational, nor did it evidence a "manifest disregard of the law." *Patten*, 441 F.3d at 234. Accordingly, the court finds that the arbitration award reinstating Mr. Byrd draws its essence from the parties' agreement.

9

### B. Attorneys' Fees

The Union also moves for an award of attorneys' fees. (Docket no. 34 at 9–10, Docket no. 39 at 6–7). Specifically, the Union asserts that the parties agreed to "final and binding" arbitration and that Safeway's petition has denied it the benefit of the bargain to "arbitrate, not litigate." (Docket no. 39 at 6). In reply, Safeway asserts that its pursuit of this action is both "reasonable and justified" and that there is no reason to deviate away from the general rule that each party bear its own fees. (Docket no. 40 at 3). Further, Safeway contends that the CBA does not permit an award of attorneys' fees and that, as such fees are not an element of damages, the Union can only seek an award through Federal Rule of Civil Procedure 54 after judgment is entered. (*Id.* at 4–5).

Neither the CBA between the parties or § 301 of the Labor Management Relations Act, under which this action was brought (Docket no. 1 at 1), provides for an award of attorneys' fees to a prevailing party. Absent explicit contractual or statutory authorization, a court will generally adhere to the American Rule requiring each party to bear its own attorneys' fees. *United Food and Commercial Workers, Local 400 v. Marvel Poultry Co., Inc.*, 876 F.2d 346, 350 (4th Cir. 1989). In the context of a challenge to an arbitration award, the Fourth Circuit has imposed a "relatively lenient" standard—that of "any arguable basis in law"—in assessing the justification of a challenge where it "goes to the fundamental issues of arbitrability or of whether an arbitration award 'draws its essence' from the contract." *Id.* Here, Safeway's challenge falls under this lenient standard and, although Safeway has not prevailed in this action, the court finds that its claims are plausible and were made in good faith. The Union's request for attorneys' fees is, therefore, denied. The parties are to bear their own attorneys' fees.

## IV. CONCLUSION

For the reasons stated above, the court will deny Safeway's motion for summary judgment (Docket no. 35), grant the Union's motion for summary judgment (Docket no. 33), and uphold the arbitrator's award. The court will deny the Union's request for attorneys' fees.

Entered this 18th day of May, 2020.

                                                                                     /s/  
                                                         John F. Anderson  
                                                         United States Magistrate Judge

Alexandria, Virginia